Good morning, your honors. My name is Jeff Blank, and I represent the plaintiffs in this case, and I'll try to reserve two minutes for rebuttal as the court's directed. Thank you. We're here on a granting a motion for summary judgment, not a trial, which is the de novo review. It's the plaintiff's contention that there were numerous section 1983 Fourth Amendment violations here. The arrest and the and the citations of both boys at school were done without not only without probable cause, they were done in accord with a 15-minute rule that the school verbally adopted that we contest as illegal, contrary to the school district regulation, contrary to state law. Wouldn't it have been trespass even without the 15-minute rule that once the students were done with anything they needed to do at the school during the course of the day, they had no right just to hang around and stay there? And that's hopefully the issue for this Court to decide. I feel that the standard in Nevada was first the school had a regulation that defined what trespass was. They said you're trespassing on someone else's property if you don't leave when told to, you're trespassing at school if you've been suspended. It didn't say on someone else's property. On private property, I think, is what the regulation said. On the property of another. Yeah, property of another, i.e., of the school. Well, then they go and they specify the school saying, they don't say and, but they say the reg says you're suspended, if you're suspended in that school, you're trespassing on school property. And one other factor here is the standard criminal trespass statute, which was applied, ignored 393.414, I think, the statute for school property. The legislature in Nevada has looked at trespassing more specifically for schools and said in that statute, trespassing on school property requires a purposeful and malicious intent to make the crime. The cases I've cited also of other state laws saying there's somewhat of a contractual right to be at school, you need misconduct. If you're on school grounds when you're not supposed to, you know, and you can say, well, okay, you're told to leave, and in this case, they said I'm waiting for my mother, it was snowing and raining, and they're saying, oh, you can't wait. And so, I think the statute, although it's not overkill, but whether it certainly seemed like overkill, but whether that's a constitutional violation is another question. Correct. And I'm thinking, I say it rises to that level because it was, it was, well, the first instance where they actually handcuffed him and took him into the school police office, there was, on the basis of the dean. Well, what was the violation? That's what I'm having a little trouble getting my arms around. Is it, is it a, is the constitutional violation the, or taking them off the property? I think it's that combined with the fact that the. Enforcing the rule? Yes, enforcing the rule, because the school police came up and were told arrest them for trespassing. I thought it was the arrest. Is it the arrest or is it the, just the enforcement of the rule? The, the, okay, you're right. The arrest is the actual violation. The, the, the policy and practice and custom is the, is the dean telling them to go do this, and they're doing it. In other words, for the, for the Monell standard, was this a customer policy of the school? I think it clearly was. They adopted it and they said, we're going to go enforce this. And, and in Nevada, they have school police that, they're there to do that at, at the behest of the. So they had notice that they weren't supposed to be there. Verbally, yes. And they knew that there were police there to enforce the rule. All, yeah, all school rules. And they were specifically asked to leave. Pardon? Specifically asked to leave. And they've been told to leave. And that's, there's a good point. In that initial case, they were told to go to another spot on campus. They weren't even told to get off campus. So it's, it's kind of blurring this 15-minute rule. They were told to go wait outside. And so the issue is, if you don't do what the administration says, have you committed a crime? And if you don't do what the administration says, have you committed a crime? And if you don't do what the administration says, have you committed a crime at school? That's what they've elevated this to. In other words, any student, if you're there at the 16th minute, I can have you arrested. And that's what they were doing in this case. There were other students waiting in the foyer. But that actually isn't so, because they, as I understand it, and I don't know whether And, and that's the analysis of the Nevada statute. There's the second school property statute that says it has to be purposeful and malicious. It has to be a malicious intent. And I think they elevated it to say for school kids, if you're on, school kids stay on school property. If you're doing something wrong or want to, you can be arrested. Simply just being there because you didn't, you weren't quick enough. Because the second citation, when they were there, the gym had been messed up. They don't know who did it. The next day they issued the same, my clients, the same trespass warning saying, well, you were there too late the day before. And it's like, well, wait a second. I didn't do anything wrong. I was leaving after track practice. And it's like, okay. So they weren't told at that time. They were just given a citation. The first time was more severe. Is that incident part of this cause of action? Yes. There were two other citations of these boys. Same thing. Not off campus quick enough. The second one, again, they were at track. They were seen by the school police there. And there was an incident at the gym. Can I just clarify something? Underhill is no longer a party to this case, right? Correct. And where does that leave the, there were allegations that he used a racial epithet and that he used excessive force. But that's also out of the case at this point? Yes. For his individual claims, yes. The only argument on that would be that the school is aware of it and accepted that custom policy and practice for Monell purposes. Do you have any evidence of that? I have, the previous school year we had testimony, not regarding Underhill, that there was racial discrimination at Hug High School. The district court looked at that and said, well, that doesn't matter this year. But the cases that I cited say, yeah, it really, it applies as what's going on at this school. And that's why I brought up that this was the only school with 75% minorities and they're being treated differently than all the other schools. Well, but they, the problem is that they were different from some of the other schools, at least some of the other schools, in that they had this record of vandalism and of problems at this school. And this court has a long history of the Supreme Court telling it that when, telling us that when we try to balance the constitutional exercise of rights by the student against the school's right to enforce discipline and security, that when we come out on the side of the student, we are wrong. So I'm just wondering how, in your view, a school faced with this problem is supposed to write reasonable rules that the students will understand, that will protect the public property. And also have to do, because the process is in place. They could, Hug High School could have gone to the board saying, look, we need a 15-minute rule here to modify the regulation as it exists to say if you're here for more than 15 minutes, we can go ahead and summon school police. The reason for that is the state law says they have a hearing, the public gets involved, they get input, and then the board makes a decision. What happened here was the high school cut all that out and just did it on their own. And I mean, I look at it as like, you know, their attempt at the High School Patriot Act. It's a safety concern, therefore we can go ahead and eliminate the rights. And the rights, and I agree with, you know, the school's concern, but if there's problems with vandalism, all these problems are going on at the school, but you don't punish the innocent. And they're saying, well, you know, somehow this is preventative. I'm like, I said, I don't see how it's preventative because they're picking out, arbitrarily picking out students, even in the first instance. There were other students in the gym foyer. They weren't told to leave. So what's the reason for doing it for these two students? They don't give any. They just decided you two have to go, you two can stay. And that's what I feel is, was inappropriate. I think the court, that's the issue. I mean, that ties into the discrimination claim where, whether policy and practice is discriminatory under Title VI. I think it flows from that, but it all kind of is on the crux of the 15-minute rule. If they adopted it properly, we wouldn't be here. They didn't. And they didn't enforce it properly either. They were completely arbitrary. Is that your argument, that they didn't adopt it validly, and if they'd had a public hearing by the school district, it would have been okay? Yes. It would have been heard because you could have made those arguments in the public sector saying, and does it change criminal statute or not? All that would have come out, as did it or didn't it. But that didn't occur. And I reserve my 55 seconds here for rebuttal. Good morning. May it please the Court. Kim Rowe, on behalf of the Appalese, the Wash County School District, as well as the individual defendants in this matter. I'd like to begin by addressing the Fourth Amendment claim that the Court is obviously concerned with. The first ---- Can I just ask a background question? Sure. My understanding of what happened here was that the district court held that the district court held that there was no 1983 action with regard to the discrimination claims because it had to be brought into Title VI, and the Supreme Court has since held otherwise. Is that the reason why Underhill is out of the case? I'm a little confused about that. No, it's not. Mr. Underhill declared personal bankruptcy. I see. It was filtered out. There was a stipulation to dismiss him on his individual ---- in his individual capacity. I see. So that error didn't have any direct impact on the case. No, it did not. And I will address the Supreme Court case in my argument, in my comments. But I would like to start with the Fourth Amendment issue because obviously the Court is troubled by the validity of the 15-minute rule, as it's called. That particular rule, and the district court properly found that it was enacted with authority because we have a statutory structure that begins with NRS 391.210, which permits a board of trustees to delegate authority to administrators to deal with the unique facts and circumstances that may occur at their school. It's a common-sense statute that allows the administration to deal with the things that they can run across at their school. The regulation that's an issue here is Washington County School District Regulation 5144.125. 5144 specifically authorizes a school principal to take control of the disciplinary functions of that school. So in essence, what's happened is the school ---- How about disciplinary functions of the school and arresting somebody from trespass are not quite the same thing. Well, what they did was they amplified that the principal under 5144 has authority to enact whatever reasonable rules are necessary to deal with student discipline and the school in general. In the instance of Hug High School, there is, in the record, ample authority for the proposition that there was rampant vandalism, graffiti, fighting, and other things that had in fact caused the school district to unpanel a blue ribbon task force, a community-based task force, prior to these incidents, to try and deal with the issues that were taking place at that school. This administration enacted the 15-minute rule to allow it to try and control those problems. Well, that's all fine, but the question is whether that gives rise to a criminal offense. It does not, Your Honor, because in this case ---- It does not. If it doesn't, then it will have to be arrested. In this particular instance, there was, the court found, probable cause for what the officer did. If the officer reasonably believed that, on the basis of facts, that a prudent person would consider that an offense was or was or had been committed, then there's probable cause. There's still a hole there, which is whether or not the principal's entirely sensible disciplinary rule gets wrapped into the property rights of the school   So the question is whether or not there is a probable cause of action. I mean, an offense. It's not self-evident. To me, if you look at the school district's regulation, 5144.1, subsection 25, which defines trespass, all it does is put into context at what point Hug High School would determine that a student was on its premises without permission. It put in context a time frame within which the student needed to be off campus. So it doesn't really change the law. It just adds to it. Is there a statute that says that defines someone who has been suspended as a trespasser? The statute, and I believe that the appellant is erroneously citing that particular regulation, that regulation has two components. The first component is that you are on school property without permission and after warning. There's a period at the end of that sentence, and then the second part goes on to indicate that you're there after having been suspended. So it's... In other words, for suspension purposes, you don't need a warning. That's really what it is. That's what that means. Because you have no right to be there. You have no right to be there in the first instance, so there's no need to warn. And that explains the statute. In this particular instance, not only did the dean of students, Mr. Shepard, but Officer Underhill specifically warned these individuals and asked them to leave, told them they were there without authority and specifically asked them to leave. So they clearly had warning, and it was only after that... What about, if we can get off this for a minute, and I understand the case is being framed around this, but the allegations against Underhill are very troubling, particularly the use of racial epithets and beating the kid up, supposedly, and there's certainly a conflict of facts on that question. So the – on both of those issues. I gather the excessive force issue is out of the case. Is that right?  But the racial discrimination issue is not. It's not. As couched against the district, either under Monell or under Title VI. Correct. But in order to be – for the district to be liable, there would have to be some evidence of customer policy under Monell whereby they had authorized or been complicit in or even been aware of anything that Officer Underhill might have been doing in that regard. What do they have to be aware of? Underhill or could they be aware of racial discrimination on campus by adult staff in general? Well, the only evidence before the court that there was racial discrimination at Hug High School relates to evidence or testimony from a teacher who was there the year prior, had nothing to do with this case, and he renders an opinion that a prior administrator who was no longer at the school had an issue with minority students. It's an opinion. There's no – counsel didn't develop in that deposition any facts on which to base that opinion. It's not admissible evidence. There is no evidence. So there's no showing of any pattern is what you're saying? No, there is none. There's none whatsoever. I would like to, because, Your Honor, you brought up the issue of what do we do with the Supreme Court decision in Fitzgerald. And that decision issued in January of this year found that Title IX does not subsume – excuse me, subsume a 1983 claim. And as the Court is aware, this Court as well as the United States Supreme Court has typically held that Title IX and Title VI are to be construed the same. It's my contention that even if this Court were to find that, as a result of Fitzgerald, that the Title VI claim in this case does not subsume the section 1983 equal protection claim, that this case does not need to be remanded. The reason for that is that the Court in reviewing the court's – Well, one reason is nobody's raised it, but go ahead. Well, I think it's an important issue. I think it is before the Court. And I want to point out, because it's relevant to the Title VI claim as well, that in the context of race in this case, that there is no evidence that there was intentional race discrimination. And, in fact, the judge devoted three pages of his opinion to evaluating the race evidence in light most favorable that he could to the plaintiff and found that a Title VI claim for race discrimination did not lie. So even if this Court were to somehow find that the equal protection claim is not subsumed by that Title VI claim, remand is not necessary because the race claim has already been analyzed in detail and a specific finding was made that there wasn't a race discrimination in this case. So we don't need to get to that. The last argument I'd like to briefly point out is that the appellant has made an argument in his brief based on negligent supervision and training relating to the school district. I would simply point out that on page 5 of the appellant's brief, he initially starts out by saying that is not before the Court. He did not appeal that. He's briefed it, but it's not subject to appeal. He did not bring that claim forth, so it's not properly before the Court. And with that, I have nothing further unless there's other questions. Don't appear to be any. Thank you. Thank you. Very briefly, the trial court stated that they could adopt safety rules in accordance with the administrative regulations. We just heard testimony. It wasn't an accord. They added to it. Therefore, it had to go through the other process. The court also said the school regulation says trespass on a property of another without permission of the owner. Who's the owner of the school? I guess it's the principal. We don't know. That's never really been defined. Or is it an administrator? But it says to be on school property. There's a specific provision. If you're on school property when suspended, you're trespassing. Additionally, that the Title VI argument, the graduation specialist, that was a totally separate issue, that these boys had Fs. They never got the services. And the Court says, well, the plaintiffs never brought up the fact that white students may not have gotten services. That's not the standard. That's their defense, and it was never raised. It was never raised because the white students were getting the services. No, but you have to prove an equal protection case, if that's what you're proving, or a Title VI case. You have to prove that black students were treated differently than white students. Correct. And the testimony was all students You can't prove that by proving that black students didn't get some service. Correct. And the Court added saying it's not enough to show that black students were getting service for a mandatory program. You have to show that white students were also not getting services. Why not? And I'm saying that is a defense that can be raised. Why not? Because if you're not giving services that are mandatory, how is that that gives an inference of discrimination. That's what you go to trial. And this was a motion for summary judgment. I can prove that at trial. Right now they're saying I have to prove up, you know, say, well, what's the defense they're going to raise, and so forth. I'm like, I showed the prima facie case black students weren't getting these services and they were required. Therefore, that gives inference to a discriminatory intent based on all the other factors that were going on. And Underhill was doing these things for all students. But if nobody's getting those services, how can it be discriminatory? If that were true, but also true. And I'm asking you in showing what you're going to prove, have to prove more than just they weren't getting those. Yeah, because in the testimony of the graduation specialist, he said we're providing these services. They're providing them. And they must be provided. And he's the guy doing it. And did you prove anything more than that? Your clients didn't get it as opposed to black students in general didn't get it? That's correct. At that point, it was those black students, my clients. There were previous other cases I requested judicial notice on Underhill's acts with black students and how they also didn't. But I'm asking you, did you make any showing? No. That anybody other than your clients didn't get the services? Correct. It was just my clients at that time. Why haven't you proved that there was any racial trigger there? Because the person providing the services to all students said all students should get them, and these were singled out. I'm saying I could go to trial and not a problem. And this is a motion. Thank you very much, Your Honors. Thank you.
judges: Schroeder, Berzon, Roth